Robert Salgado (SBN 297391)
DAVIS & NORRIS, LLP
5755 Oberlin Dr. Suite 301
San Diego, CA 92121
Phone: 858-333-4103
Fax Number: 205-930-9989
Email: rsalgado@davisnorris.com

Dargan Ware (SBN 329215)
John E. Norris (pro hac vice anticipated)
Andrew Wheeler-Berliner (SBN 290495)
DAVIS & NORRIS, LLP
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone; 205.930.9900
dware@davisnorris.com
jnorris@davisnorris.com
andrew@davisnorris.com

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE FRASER, CODEY DeNOYELLES, CHEVALIA MORGAN, CAROLYN FLOWERS, PETRINA FENNELL, JILL MAYER, KAT HALL, EUGENE F. ELANDER, IRIS DELGADO, and CHRISTA RODRIGUEZ<br><br>Plaintiff(s),<br><br>vs.<br><br>CAL-MAINE FOODS, INC., ROSE ACRE FARMS, INC., MICHAEL FOODS, INC., HILLANDALE FARMS, TRILLIUM FARM HOLDINGS, LLC., REMBRANDT ENTERPRISES, INC., HICKMAN'S EGG RANCH, INC., DAYBREAK FOODS, INC., WEAVER BROS., INC., PRAIRIE STAR FARMS, LLC., SPARBOE FOODS CORP., HERBRUCK'S POULTRY RANCH, INC., WABASH VALLEY PRODUCE, INC., CENTRUM VALLEY FARMS, L.P., OPAL FOODS, LLC., WHOLE FOODS MARKET GROUP, INC., COSTCO WHOLESALE CORP., RALEY'S, STATER BROS. HOLDINGS, INC., | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>1. **Violations of Cal. Penal Code § 396;**<br>2. **Violation of the Unfair Business Practices (Cal. Bus. And Prof. Code § 17200 et seq.)**<br><br>April 20, 2020 |

WAL-MART STORES, INC., AMAZON.COM, )
INC., SAVE MART SUPERMARKETS, )
ALBERTSON'S COMPANIES, INC., TRADER )
JOE'S CO., THE KROGER CO., WINCO )
HOLDINGS, INC. )
)
)
                    Defendant(s).     )
                                      )

## INTRODUCTION

1. This California class action concerns the despicable and illegal practice of price-gouging of essential groceries, specifically eggs, in the midst of the ongoing and unprecedented pandemic. Plaintiffs and the class they seek to represent bought grossly marked-up eggs through the supply chain created by the defendants, which includes producers, wholesalers, and retailers. Because consumers such as plaintiffs lack access to information about which of the defendants, or all of them, participated in the price-gouging resulting in a near-tripling of egg prices in the past 30 days, plaintiffs have sued all the defendants in the alternative. Plaintiffs cannot assert that every defendant engaged in price-gouging, but plaintiffs can and do assert that some or all of these defendants illegally marked up egg prices following the Governor's declaration of an emergency in violation of California law.

2. The world is in the midst of a global pandemic involving a novel coronavirus called COVID-19 that causes an often severe and sometimes fatal respiratory infection. The outbreak originated in December, 2019, in Wuhan, Hubei Province, China, and in short order the local epidemic spread globally and was deemed a pandemic by the World Health Organization in March, 2020.

2. The first reported case of COVID-19 in the United States was diagnosed in Washington state in late January, 2020. The case involved a man who had recently travelled to the epicenter of the outbreak in Wuhan.

3. By mid-March 2020, there were reported cases in all 50 American states. The federal government, most states, and many local governments called for stay-at-home and social distancing measures designed to slow the spread of the disease. California's Governor, Gavin Newsom, declared a state of emergency in this state on March 4, 2020. As of the writing of this complaint, the vast

Davis and Norris, LLP.
5755 Oberlin Drive, Suite 301
San Diego, CA 92121
Tel: 858-333-4103   Fax: 205-930-9989

majority of Americans are subject to these measures. Even in areas not subject to government-mandated stay-at-home orders, most people are voluntarily staying at home except to shop for necessities and to go to work in "essential" occupations such as healthcare and food sales and delivery services. The undersigned counsel writing this complaint is doing so from his home office.

4. The economic effect of the government-mandated and voluntary measures to combat the pandemic has been extreme. Many are out of work. Many have had their wages and salaries reduced. Bars and restaurants have been mostly closed for weeks, some remaining open but limiting themselves to curbside delivery and home delivery, and it is predicted many will never re-open. Professional and college sports seasons have been canceled altogether, throwing many out of work. Schools, colleges, and universities are now limited to online classes. Those in the business of putting on concerts, plays, and other forms of entertainment are idle as public gatherings have been banned. All casinos are closed, throwing many more out of work. Hollywood Boulevard, Rodeo Drive, and Haight-Asbury are all deserted. Oil prices are at their lowest point in decades. The stock market is in freefall.

5. As in any time of economic turmoil, there are those who seek to profit from the misery of millions. Defendants, who are producers, wholesalers, and retailers of eggs, comprise one such set of actors seeking to unfairly profit from the increased consumer demand for eggs in the midst of the ongoing crisis. Again, because it is impossible for consumers such as plaintiffs to obtain information concerning the secretive process of price-setting, this lawsuit does not assert that each and every defendant engaged in price-gouging. Rather, plaintiffs assert that, at a minimum, some of these defendants did so. This pleading in the alternative is specifically authorized by Rule 20(2)(A) of the Federal Rules of Civil Procedure.

6. The price of eggs nearly tripled between the onset of the COVID-19 pandemic and the end of March. Egg prices have remained much more than ten percent higher than they were prior to the declaration of emergency.

7. Some or all of the defendants are engaging in price-gouging prohibited by California law. Plaintiffs allege this because of the undeniable fact that egg prices nearly tripled after the emergency declaration.

CLASS ACTION COMPLAINT

# PARTIES

8. Plaintiff Codey DeNoyelles purchased eggs at a store owned or operated by defendant Raley's and defendant Costco Wholesale Corp. at a grossly inflated price after the declaration of emergency by Governor Newsom.

9. Plaintiff Adrienne Fraser purchased eggs at a store owned by defendant Whole Foods Market Group, Inc., and ordered eggs from defendant Amazon.com, Inc., at a grossly inflated price after the declaration of emergency by Governor Newsom.

10. Plaintiff Chevalia Morgan purchased eggs at a store owned or operated by defendant Walmart Stores, Inc. at a grossly inflated price after the declaration of emergency by Governor Newsom.

11. Plaintiff Carolyn Flowers purchased eggs at a store owned or operated by defendant Save Mart Supermarkets at a grossly inflated price after the declaration of emergency by Governor Newsom.

12. Plaintiff Petrina Fennell purchased eggs at a store owned or operated by defendant Grocery Outlet, Inc. at a grossly inflated price after the declaration of emergency by Governor Newsom.

13. Plaintiff Jill Mayer purchased eggs at a store owned or operated by defendant Albertson's Companies, Inc. at a grossly inflated price after the declaration of emergency by Governor Newsom.

14. Plaintiff Kat Hall purchased eggs at a store owned or operated by defendant Albertson's Companies, Inc. at a grossly inflated price after the declaration of emergency by Governor Newsom.

15. Plaintiff Eugene F. Elander purchased eggs at stores owned or operated by defendant Trader Joe's Co. and defendant The Kroger Co. at a grossly inflated price after the declaration of emergency by Governor Newsom.

16. Plaintiff Iris Delgado purchased eggs at a store owned or operated by defendant WinCo Holdings, Inc. at a grossly inflated price after the declaration of emergency by Governor Newsom.

17. Plaintiff Christa Rodriguez purchased eggs at a store owned or operated by defendant Stater Bros. Holdings, Inc., at a grossly inflated price after the declaration of emergency by Governor Newsom.

18. Defendant Cal-Maine Foods, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Jackson, Mississippi. It is a corporate citizen of Delaware and Mississippi.

19. Defendant Rose Acre Farms, Inc. is a corporation organized under the laws of Indiana with its principal place of business in Seymour, Indiana. It is a corporate citizen of Indiana.

20. Defendant Michael Foods, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Minnetonka, Minnesota. It is a corporate citizen of Delaware and Minnesota.

21. Defendant Hillandale Farms is a corporation organized under the laws of Ohio, with its principal place of business in Newark, Ohio. It is a corporate citizen of Ohio.

22. Defendant Trillium Farm Holdings, LLC is an entity organized under the laws of Ohio, with its principal place of business in Johnstown, Ohio. It is a corporate citizen of Ohio.

23. Defendant Rembrandt Enterprises, Inc. is a corporation organized under the laws of Iowa, with its principal place of business in Spirit Lake, Iowa. It is a corporate citizen of Iowa.

24. Defendant Hickman's Egg Ranch, Inc. is a corporation organized under the laws of Arizona, with its principal place of business in Buckeye, Arizona. It is a corporate citizen of Arizona.

25. Defendant Daybreak Foods, Inc. is a corporation organized under the laws of Wisconsin, with its principal place of business in Lake Mills, Wisconsin. It is a corporate citizen of Wisconsin.

26. Defendant Weaver Bros., Inc. is a corporation organized under the laws of Ohio, with its principal place of business in Versailles, Ohio. It is a corporate citizen of Ohio.

27. Defendant Prairie Star Farms, LLC is an entity organized under the laws of Ohio, with its principal place of business in New Weston, Ohio. It is a corporate citizen of Ohio.

28. Defendant Sparboe Foods Corp. is a corporation organized under the laws of Iowa, with its principal place of business in Litchfield, Minnesota. It is a corporate citizen of Iowa and

Minnesota.

29. Defendant Herbruck's Poultry Ranch, Inc. is a corporation organized under the laws of Michigan, with its principal place of business in Saranac, Michigan. It is a corporate citizen of Michigan.

30. Defendant Wabash Valley Produce, Inc. is a corporation organized under the laws of Indiana, with its principal place of business in Dubois, Indiana. It is a corporate citizen of Indiana.

31. Defendant Centrum Valley Farms, L.P., is an entity organized under the laws of Indiana, with its principal place of business in Clarion, Iowa. It is a corporate citizen of Iowa and Indiana.

32. Defendant Opal Foods, LLC is an entity organized under the laws of Delaware, with its principal place of business in Neosho, MO. It is a corporate citizen of Delaware and Missouri.

33. The defendants described in Paragraphs 18-32 are involved in egg production, distribution, and wholesale delivery, and are in the supply chain bringing eggs to market in the Northern District of California.

34. Whole Foods Market Group, Inc., is a corporation organized under the laws of Delaware with its principal place of business in Austin, Texas. It is a corporate citizen of Delaware and Texas.

35. Costco Wholesale Corp. is a corporation organized under the laws of Washington with its principal place of business in Issaquah, Washington. It is a corporate citizen of Washington.

36. Raley's is a corporation organized under the laws of California, with its principal place of business in Sacramento, California. It is a corporate citizen of California.

37. Stater Bros. Holdings, Inc. is a corporation organized under the laws of California, with its principal place of business in San Bernardino, California. It is a corporate citizen of California.

38. Defendant Wal-Mart Stores, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Bentonville, Arkansas. It is a corporate citizen of Delaware and Arkansas.

39. Defendant Amazon.com, Inc., is a corporation organized under the laws of Delaware,

- 6 -
CLASS ACTION COMPLAINT

with its principal place of business in Seattle, Washington. It is a corporate citizen of Delaware and Washington.

40. Defendant Save Mart Supermarkets is a corporation organized under the laws of California, with its principal place of business in Modesto, California. It is a corporate citizen of California.

41. Defendant Albertson's Companies, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Boise, Idaho. It is a corporate citizen of Delaware and Idaho.

42. Defendant Trader Joe's Co. is a corporation organized under the laws of California, with its principal place of business in Pasadena, California. It is a corporate citizen of California.

43. Defendant The Kroger Co. is a corporation organized under the laws of Ohio, with its principal place of business in Cincinnati, Ohio. It is a corporate citizen of Ohio.

44. Defendant WinCo Holdings, Inc. is a corporation organized under the laws of Idaho, with its principal place of business in Boise, Idaho. It is a corporate citizen of Idaho.

45. The defendants described in paragraphs 34-44 are owners or operators of retail stores or online retailers doing business in this district.

## JURISDICTION AND VENUE

46. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the claims in this case form part of a class action in which the amount in controversy exceeds the sum of $5,000,000.00 and the members of the class include citizens of different states than some or all of the defendants.

47. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to plaintiffs' complaint occurred in this district.

48. Each defendant, whether a retailer, wholesaler, or producer of eggs, is in the business of supplying eggs to customers in this federal district. Each defendant is part of the supply chain for eggs in California.

## LEGAL FRAMEWORK AND BACKGROUND

49. California law makes it unlawful for any person to increase the price of a product by more than ten percent during a state of emergency or local emergency. Cal. Penal Code § 396. In this

statute, the Legislature expressed its intent "to protect citizens from excessive and unjustified increases in the prices charged during or shortly after a declared state of emergency or local emergency for goods and services that are vital and necessary for the health, safety, and welfare of consumers." Id. at 396(a). Further, the California Legislature made it clear that this act should be interpreted liberally for the protection of consumers.

50. Governor Gavin Newsom declared a state of emergency due to the COVID-19 pandemic on March 4, 2020, with a proclamation available online at https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf. Governor Newsom's proclamation specifically invoked the provisions of Penal Code § 396 and extended the time period in which they will remain in effect until September.

51. Section 396 of the California Penal Code applies not only to retailers, but to distributors, wholesalers, and producers as well. Attorney General Xavier Becerra made this clear in a proclamation issued March 27, 2020, available online at https://oag.ca.gov/news/press-releases/attorney-general-becerra-reminds-wholesalers-and-manufacturers-they-are-subject.

52. Section 396 explicitly states that a violation of the price-gouging statute "shall constitute an unlawful business practice and an act of unfair competition within the meaning of Section 17200 of the Business and Professions Code." Cal. Pen. Code § 396(i). Thus, the rights and remedies conferred by the UCL (Bus. & Prof. Code § 17200 et seq.) are available to consumer to combat price gouging.

53. Section 396 also creates a safe harbor, but only for those sellers who price the goods at no more than ten percent above their own costs, plus the markup usually charged prior to the state of emergency. Because the price of eggs have risen more than 180% during the COVID-19 emergency, it is clear that some or all of the defendants have raised their prices to an extent that violates the law.

54. Pursuant to Rule 20 of the Federal Rules of Civil Procedure, plaintiffs may join all defendants against whom they seek relief jointly, severally, or in the alternative, arising out of the same transaction or series of transactions. Plaintiffs' purchases of eggs from retailers was part of a series of transactions that also included any other sale of the eggs that occurred between their being

laid and their arrival at the point of retail sale. Plaintiffs seek relief in the alternative from any and all entities that marked up the eggs more than ten percent during the COVID-19 emergency.

**CLASS ALLEGATIONS**

55. This statewide class action is maintainable against the defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following class against each defendant:

> All consumers who purchased eggs in the state of California that were sold, distributed, produced, or handled by any of the defendants during the state of emergency declared by Governor Gavin Newsom on March 4, 2020. All employees of the Court and plaintiffs' counsel are excluded.

56. Because plaintiffs bring this case in the alternative against numerous individual entities involved in selling eggs in California, plaintiffs anticipate that they will seek to certify a number of subclasses against particular defendants.

57. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. California is the nation's most populous state, with more than 40 million residents. According to the Association of California Egg Farmers, these 40 million people consume an average of three hundred eggs per year. http://californiaeggfarmers.org/. This translates to more than twelve billion eggs sold in California each year, or approximately one billion per month. The vast majority of these eggs are sold by the defendants named in this lawsuit, who represent XX% of the California grocery market, as well as the fifteen largest wholesalers of eggs in California. The number of people who purchased eggs during the state of emergency is far too large for practicable joinder in a single suit.

58. Pursuant to Rule 23(a)(2), this case is predominated by questions of law and fact common to all class members, including whether the defendants increased their price by more than ten percent during the COVID-19 emergency.

59. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class. Every member of the class is a consumer who purchased eggs during the emergency.

60. Pursuant to Rule 23(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interest adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

61. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiff, like those of all class members, arise out of conduct by one or more of the defendants to raise the price of eggs in California, affecting all California consumers, and thus all class members, in the same fashion. For these reasons, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

## COUNT ONE: VIOLATION OF THE UNFAIR COMPETITION LAW
## CLAIM FOR INJUNCTIVE RELIEF

62. Plaintiffs incorporate by reference the factual averments of the preceding paragraphs as if fully set forth herein.

63. The Unfair Competition Law (UCL, Cal. Bus. & Prof. Code § 17200 et seq.) prohibits businesses from engaging in any unlawful, unfair, or fraudulent practice.

64. Section 396(i) of the California Penal Code specifically makes violation of that section a violation of the UCL.

65. One or more defendants violated § 396 by unjustifiably raising the price of eggs by more than ten percent during the declared state of emergency.

66. Defendants' violation of Penal Code Section 396 constitutes a violation of the Unfair Competition Law.

67. Each plaintiff is a person who suffered injury-in-fact, and lost money due to defendants' violations of the UCL, providing standing under Section 17204 of the Business and Professions Code.

68. Plaintiffs are thus entitled to injunctive relief pursuant to Section 17203 of the Business and Professions Code.

69. Plaintiffs seek to enjoin all defendants from selling (at any level in the supply chain)

eggs at a price more than ten percent greater than the price of eggs prior to the declaration of emergency on March 4, 2020.

## COUNT TWO: VIOLATION OF THE UNFAIR COMPETITION LAW
## CLAIM FOR RESTITUTION

70. Plaintiffs incorporate by reference and reallege all factual averments of the preceding paragraphs as if fully set forth herein.

71. As explained in Count One, the defendants violated the Unfair Competition Law by violating Section 396 of the California Penal Code.

72. This violation entitles plaintiffs and the class to restitution. See Kwikset Corp. v. Superior Court, 207 P.3d 20, 34 (Cal. 2009).

73. The measure of restitution in California is the difference between the price paid and the value received. Chowning v. Kohl's Dept. Stores, Inc., 2018 WL 3016908 at *1-2 (9th Cir. 2018).

74. Under Section 396 of the California Penal Code, the legal value of the eggs purchased by plaintiffs and the class could be no higher than ten percent more than the average retail price of eggs prior to the emergency. Plaintiffs and the class are thus entitled restitution measured by the difference between that price and the price paid.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for the following relief,

(A) An order certifying the above-described class pursuant to Federal Rule of Civil Procedure 23, with appropriate notice to absent class members;

(B) An order appointing plaintiffs' counsel as class counsel for the statewide class;

(C) A declaratory ruling that the defendants have engaged in the practices alleged herein in violation of California law;

(D) A permanent injunction enjoining defendants from selling eggs at prices prohibited by Section 396 of the California Penal Code for the remainder of the COVID-19 emergency;

(E) Restitution to plaintiffs and absent class members in an amount determined by the court pursuant to California law;

(F) Any further or different relief the Court may find appropriate.

**JURY DEMAND**

Plaintiffs demand trial by jury for all issues so triable.

DATED: April 20, 2020                                       **DAVIS & NORRIS, LLP**

*[signature]*

Robert B. Salgado, on behalf of
Plaintiffs and Proposed Class

Davis and Norris, LLP.
5755 Oberlin Drive, Suite 301
San Diego, CA 92121
Tel: 858-333-4103   Fax: 205-930-9989